CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-5737 Kuakini Highway, Suite 102
Kailua-Kona, Hawai'i 96740
Telephone: (808) 322-3389
Facsimile: (202) 204-5181
E-Mail: kculpepper@culpepperip.com

THE LAW OFFICE OF GREGORY A. FERREN
Gregory A. Ferren, Bar No. 6476
92-1101 Koio Drive, Suite B
Kapolei, Hawai'i 96707
Telephone: (808) 947-1605
Facsimile: (888) 705-0511
E-Mail: greg@ferrenlaw.com

Attorneys for Plaintiffs
Millennium Funding, Inc. and
Headhunter, LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Millennium Funding, Inc., and Headhunter, LLC, <br><br> Plaintiffs, <br> vs. <br><br> Taylor Wolf, <br> AKA WIRELESS, INC. d/b/a VICTRA, and <br> ABC PHONES OF NORTH CAROLINA, INC. d/b/a VICTRA <br><br> Defendants. | **Case No.: 1:18-cv-185-JMS-KSC** <br> (Copyright) <br><br> **FIRST AMENDED COMPLAINT; EXHIBITS 1-2; DECLARATION OF KERRY S. CULPEPPER; CERTIFICATE OF SERVICE** <br><br> **(1) CONTRIBUTORY COPYRIGHT INFRINGEMENT** |

20-016

# FIRST AMENDED COMPLAINT

First Plaintiff Millennium Funding, Inc. (hereafter: "Millennium") and Second Plaintiff Headhunter, LLC (hereafter: "Headhunter") (collectively: "Plaintiffs") file this Complaint against First Defendant Taylor Wolf (hereafter: "Wolf"), Second Defendant AKA WIRELESS, Inc. d/b/a VICTRA (hereafter: "AKA") and Third Defendant ABC PHONES OF NORTH CAROLINA, INC. also d/b/a VICTRA (hereafter: "ABC") (collectively "Defendants") and allege as follows:

## I.   NATURE OF THE ACTION

1.   This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act").

2.   The Plaintiffs allege that Defendants are liable for contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

## II.   JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.   First Defendant Wolf resides in, solicits, transacts, and/or is doing business within this jurisdiction, and has committed unlawful and tortious acts within this jurisdiction that have caused injury to Plaintiffs.  As such, First Defendant

Wolf has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over her.

5. Second Defendant AKA solicits, transacts, and/or is doing business within this jurisdiction, and has committed unlawful and tortious acts within this jurisdiction that have caused injury to Plaintiffs. As such, Second Defendant AKA WIRELESS, INC has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over it.

6. Third Defendant ABC solicits, transacts, and/or is doing business within this jurisdiction, and has committed unlawful and tortious acts within this jurisdiction that have caused injury to Plaintiffs. As such, Third Defendant ABC has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over it.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendants reside and/or conduct business, and, therefore, can be found in this State. Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or Defendants' agents and employees reside or may be found in this District.

## III. PARTIES

### A.  First Plaintiff Millennium Funding, Inc.

8. Millennium is a corporation organized and existing under the laws of the State of Nevada.

9. Millennium is a production company and distributor of a notable catalog of major motion pictures. (www.millenniumfilms.com).

10. Millennium is the owner of the copyright for the motion picture "*Mechanic: Resurrection*" (hereafter: the "First Work") a major motion picture released in 2016 as shown in Exhibit "1".

11. The First Work is the sequel to the highly successful 2011 film "*The Mechanic*". The First Work is a major production with notable actors, a national advertising campaign, and a significant opening release in over 2,200 screens, promoted in part by its web site: http://www.mechanic.movie.

### B.  Second Plaintiff Headhunter, LLC.

12. Headhunter is a limited liability company organized under the laws of Nevada with principal offices in Los Angeles, California.

13. Headhunter is an affiliate of Voltage Pictures, a production company with a notable catalog of major motion pictures. (www.voltagepictures.com).

14. Headhunter is the owner of the copyright for the motion picture in the Work "*A Family Man*" (hereafter: the "Second Work"), a major motion picture released in July of 2017.

20-0016  18-185

15. The Second Work is about a man torn between his profession as a corporate headhunter and his loyalties and love for his family.

### C. First Defendant Taylor Wolf

16. Upon information and belief, First Defendant Wolf is an individual over the age of 18.

17. Upon information and belief, First Defendant Wolf was, at the time of the alleged events, and, currently is an employee of a Verizon branded store (hereafter: "Store") owned or controlled by either one of or both Second Defendant AKA or Third Defendant ABC, both doing business as VICTRA in Kahului, Hawaii.

18. As an employee of VICTRA, First Defendant Wolf sells and has sold telecommunication equipment such as cell phones, tablet devices and/or computing devices to members of the general public at the Store.

19. As an employee of VICTRA, First Defendant Wolf assisted in or performed installation and/or set up of said cell phones, tablet devices and computing devices for said members of the general public at the Store.

20. First Defendant Wolf promoted the software application Show Box (hereafter: the "Show Box app") to said members of the general public, including Kazzandra Pokini and her husband Norbert Pokini at the Store.

5

20-0016 18-185

21. The Show Box app, and other similar applications, are widely and commonly known to be used to view movies and other content in violation of copyright owners' rights.

22. First Defendant Wolf promoted the Show Box app by telling members of the general public, including Kazzandra Pokini and her husband Norbert Pokini, that it could be used to watch "free movies" at the Store.

23. First Defendant Wolf promoted the Show Box app to the general public to convince them to purchase services of VICTRA or telecommunication equipment to thereby financially benefit herself and VICTRA.

24. First Defendant Wolf knew or had reason to know that using the Show Box app would result in direct infringement of the Copyrights of specific material.

25. First Defendant Wolf knew or had reason to know that users of Show Box directly infringed the Copyrights of specific material.

26. First Defendant Wolf installed the Show Box app on a tablet device of Kazzandra Pokini while Kazzandra Pokini was at the Store so that Kazzandra Pokini could watch content in violation of copyright laws (i.e., "free movies").

27. First Defendant Wolf's conduct of distributing and installing the Show Box app was the type of conduct she was employed to perform and, therefore, was within the scope of her employment with VICTRA.

28. First Defendant Wolf's conduct of distributing and installing the Show Box app occurred substantially within her authorized work time and within the space limits of the Store and, therefore, was within the scope of her employment with VICTRA.

29. Upon information and belief, VICTRA benefited financially from First Defendant Wolf's conduct.

30. First Defendant Wolf's conduct of distributing and installing the Show Box app was actuated, at least in part, for the purpose of serving VICTRA.

31. Upon information and belief, First Defendant Wolf herself used or currently uses the Show Box app to watch content.

32. First Defendant Wolf is a contributory infringer as more particularly described below.

33. Plaintiffs were injured and suffered damages as a result of First Defendant Wolf's conduct.

### C.  Second Defendant AKA and Third Defendant ABC

34. Second Defendant AKA is a corporation organized under the laws of South Dakota.

35. Second Defendant AKA registered the trade name VICTRA with the Hawaii Department of Commerce and Consumer Affairs on or around Oct. 25,

2017, Certificate No. 4,194,174, with the stated purpose of VERIZON PREMIER RETAILER.

36. Upon information and belief, Second Defendant AKA is doing business in Hawaii under the trade name VICTRA.

37. Third Defendant ABC is a corporation organized under the laws of North Carolina.

38. Third Defendant ABC registered the trademark VICTRA with the United States Patent and Trademark Office on April 17, 2018 as Reg. No. 5,450,011 in the classification CLASS 35: Retail store services featuring telecommunication and information technology products and services in the nature of portable electronic devices, mobile phones, smartphones, tablets, mobile hotspot devices, smart watches, portable electronic device accessories, wireless telephone services and plans, technical support services, and device troubleshooting services.

39. On the website https://www.victra.com/about-us.aspx, it is stated "Victra was founded as a partnership by Richard and David Balot in October 1996 in Wilson, North Carolina. We were incorporated as ABC Phones of North Carolina, Inc. in 1999…" as of July 2, 2018.



40. On the same website, it is stated, "We believe accountability and clarity are key."

41. Upon information and belief, Third Defendant ABC is doing business in Hawaii under the trade name VICTRA.

42. As of April 1, 2018, GEORGE SHERMAN is the president and a director of ABC.

43. As of April 1, 2018, GEORGE SHERMAN is a director, the president, and Chief Executive Officer of AKA.

9

20-0016  18-185

44. Upon information and belief, the same individual, GEORGE SHERMAN, is an officer and director of both AKA and ABC.

45. Both AKA and ABC claim rights to the same trademark, namely, "VICTRA".

46. Upon information and belief, Third Defendants ABC and AKA are alter egos of one another.

47. At all relevant times, First Defendant Wolf was an employee of VICTRA (and one or both of Second and Third Defendants).

48. Upon information and belief, other employees of VICTRA informed First Defendant Wolf of Show Box and encouraged her to distribute and promote Show Box to customers in order to drive sales of telecommunication equipment, thus giving financial benefit to Second and Third Defendants.

49. The Second and Third Defendants are vicariously liable for the contributory copyright infringement of First Defendant Wolf, as First Defendant Wolf was acting within the scope of her employment when she committed the wrongful conduct described above, as the Second and Third Defendants had the right and the power to directly control the activities of First Defendant Wolf, and as the Second and Third Defendants received a direct financial benefit, financial advantages, and/or other economic consideration from the infringing activities of First Defendant Wolf.

## V.   FACTUAL BACKGROUND

### A.  *The Plaintiffs Own the Copyrights to the Works*

50.   ME2 Productions, Inc. (hereafter: "ME2") was a corporation organized and existing under the laws of the State of Nevada.

51.   ME2 was merged into Millennium on or around November 2017.

52.   Millennium is the owner of the copyright in the First Work.  The First Work is the subject of a copyright registration (Registration Number PA 1-998-057), and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "1".

53.   Headhunter is the owner of the copyright in the Second Work.  The Second Work is the subject of a copyright registration (Registration Number PA 2-039-392), and this action is brought pursuant to 17 U.S.C. § 411.  *See,* Exhibit "2".

54.   The Works are motion pictures currently offered for sale in commerce.

55.   Defendants had notice of Plaintiffs' rights through general publication and advertising and, more specifically, as identified in the content of the motion pictures, advertising associated with the motion pictures, and packaging and copies, each of which bore a proper copyright notice.

### B. *The First Defendant Wolf Induced Kazzandra Pokini to Infringe the Plaintiffs' Copyrights*

56.   The Show Box app uses BitTorrent Protocol to download illicit copies of copyright protected content.

57.   BitTorrent is one of the most common peer-to-peer file sharing

11

protocols (in other words, set of computer rules) used for distributing large amounts of data.

58. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

59. A BitTorrent "Client" is a software program that implements the BitTorrent Protocol.

60. Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

61. The Show Box app is a BitTorrent Client.

62. The Show Box app is or has been promoted on numerous Internet websites for infringing purposes.

63. On the interactive website http://showboxappdownload.com, as of May 15, 2018, the Show Box app is described as "FREE MOVIES APP".

64. As of May 15, 2018, on the website

(http://showboxappdownload.com/download-show-box-apk/), the Show Box app is described as "Download or watch free movies with the Show Box app on your Android device. The app allows users to stream HD quality movies and shows."




65. On the website http://showboxappdownload.co as of May 15, 2018, the Show Box app is described as "Unlike most other apps on the genre which get you movies and TV shows to watch in return on a subscription or payment, Show Box is

13

absolutely FREE!"



### 1. Defendant Wolf Installed the Show Box app onto Kazzandra Pokini's Tablet

66. Kazzandra Pokini went to the VICTRA Store with her husband, Norbert Pokini, to shop for a new phone on or around June 28, 2017, and were shown phone options by First Defendant Wolf.

67. In an effort to persuade Kazzandra Pokini to purchase a new phone and/or service, First Defendant Wolf offered Kazzandra Pokini a free tablet with said purchase.

68. When Kazzandra Pokini inquired about the usefulness of the free tablet, First Defendant Wolf told Kazzandra Pokini that she could use it to watch free movies.

69. Based upon First Defendant Wolf's statement, Kazzandra Pokini decided to purchase a new phone and receive the free tablet.

70. The Defendant Wolf than begin the set up process for Kazzandra Pokini's new phone. The Defendant Wolf offered to install the Show Box app on Kazzandra Pokini's tablet while waiting for the set up process to be completed at the Store. Kazzandra Pokini agreed to let Defendant Wolf install the Show Box app on the tablet.

71. First Defendant Wolf installed the Show Box app onto Kazzandra Pokini's tablet device and showed Kazzandra Pokini and her husband how to use the Show Box app to watch movies.

72. First Defendant Wolf knew that the Show Box app would cause Kazzandra Pokini to make copies of copyrighted content in violation of copyright laws of the United States.

### 2. The Defendant Wolf Promoted the Show Box app for infringing purposes

73. The Defendant Wolf told Kazzandra Pokini that her tablet device could be used to watch free movies.

74. The Defendant Wolf installed the Show Box app on the tablet device of Kazzandra Pokini while she was in the Store.

75. The Defendant Wolf showed Kazzandra Pokini how to use the Show Box app to download and watch movies while Kazzandra Pokini was in the Store

and near or at the same time as First Defendant Wolf showed Kazzandra Pokini how to use her new phone.

76.  Because the installation of the Show Box app and the explanation happened at the Store, Kazzandra Pokini and her husband were under the impression that the Show Box app was a legitimate app for watching free movies.

### *C. Kazzandra Pokini used the Show Box app to infringe Plaintiffs' Works as instructed by Defendant Wolf*

77.  Kazzandra Pokini, following the instructions of First Defendant Wolf, used the Show Box app to download and make copies of the Plaintiffs' Works on or around July 12, 2017 (UTC).

### VI. FIRST CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon Inducement)

78.  Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

79.  Plaintiffs are the copyright owners of the Works which each contains an original work of authorship.

80.  First Defendant Wolf had actual and/or constructive knowledge of third parties' infringement of Plaintiffs' exclusive rights under the Copyright Act.

81.  First Defendant Wolf intentionally induced the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to reproduce, publicly distribute, publicly perform, and/or

display their Copyrighted Works. As intended and encouraged by First Defendant Wolf, the Show Box app was used to connect Kazzandra Pokini to an unauthorized Torrent source to deliver a copy of Plaintiffs' Copyrighted Works.

82. The First Defendant Wolf induced the aforementioned acts of infringement by supplying the Show Box app that facilitates, enables, and creates direct links between their users and the infringing sources, and by actively inducing, encouraging, and promoting the use of the Show Box app for blatant copyright infringement.

83. First Defendant Wolf's intentional inducement of the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

84. First Defendant Wolf's inducement of the infringement of Plaintiffs' Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of the Plaintiffs.

85. First Defendant Wolf's actions are a direct and proximate cause of the infringements of Plaintiffs' Works.

86. The Plaintiffs did not authorize, permit, or provide consent to the First Defendant Wolf inducing, causing, or materially contributing to the infringing conduct of others.

87. The Plaintiffs did not authorize, permit, or provide consent to their

17

Works being publicly displayed, performed or distributed via the Show Box app.

88. By engaging in the contributory infringement alleged in this Complaint, the First Defendant Wolf deprived not only the producer of the Works from income that could have been derived when these films were shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of these films, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy. The First Defendant Wolf's misconduct therefore offends public policy.

89. The Plaintiffs have suffered damages that were proximately caused by the First Defendant Wolf's contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

### VII. SECOND CLAIM FOR RELIEF
**(Employer Liability for Employee's Contributory Copyright Infringement based upon Inducement under Respondeat Superior)**

90. Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

91. First Defendant Wolf's contributory infringement occurred within the scope of her employment to Second Defendant AKA. Therefore, Second Defendant AKA is liable for the contributory infringement of First Defendant Wolf.

### VIII. THIRD CLAIM FOR RELIEF
**(Employer Liability for Employee's Contributory Copyright Infringement based upon Inducement under Respondeat Superior)**

92. Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

93. According to its website, third Defendant ABC's believes accountability is key. Accordingly, Third Defendant ABC should be held accountable for the actions of its employees.

94. First Defendant Wolf's contributory infringement occurred within the scope of her employment to Third Defendant ABC. Therefore, Third Defendant ABC is liable for the contributory infringement of First Defendant Wolf.

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(A) enter preliminary and permanent injunctions enjoining Defendants from continuing to contribute to infringement of the Plaintiffs' copyrighted Works;

(B) award the Plaintiffs' statutory damages per Work pursuant to 17 U.S.C. § 504-(a) and (c);

(C) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(D) grant the Plaintiffs any and all other and further relief that this Court deems just and proper.

DATED: Kailua-Kona, Hawaii, July 2, 2018.

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper


DATED: Kapolei, Hawaii, July 2, 2018.


THE LAW OFFICE OF GREGORY A. FERREN


/s/ Gregory A. Ferren
Gregory A. Ferren

Attorneys for Plaintiffs

20-0016  18-185